# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PABLO GIOVANNI SANTIAGO,

       Applicant,

v.                                                                                    CV 09-1060 MV/WPL

GEORGE TAPIA, WARDEN, AND
THE ATTORNEY GENERAL OF
THE STATE OF NEW MEXICO,

       Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Pablo Giovanni Santiago was convicted of kidnaping, possession of a facsimile or hoax explosive, two counts of robbery, and two counts of conspiracy to commit robbery in Bernalillo County, New Mexico. (Record Proper (RP) 241-42.) He was sentenced to imprisonment for a total of nineteen-and-a-half years. (*Id.* at 242.) Having unsuccessfully pursued appellate and habeas remedies in state court, he filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. Santiago asserts that his rights to a speedy trial and to compulsory process were violated and that his trial counsel was ineffective. For the reasons that follow, I recommend that the application be denied.

### STANDARD OF REVIEW

When a state court has adjudicated a federal habeas applicant's claims on the merits, the applicant is entitled to federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d); *see also* 28 U.S.C. § 2254(e)(1) (requiring federal habeas court to presume that state court's determination of factual issues is correct unless the applicant rebuts the presumption by clear and convincing evidence). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (internal citations omitted). A state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (internal citations omitted).

This deferential standard of review does not apply if the state court did not address a claim on the merits. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004). In the absence of an adjudication on the merits, the federal court reviews pure questions of law and mixed questions of law and fact *de novo*. *Hooks v. Ward*, 184 F.3d 1206, 1223 (10th Cir. 1999). But if a state court has made factual determinations that are relevant to these questions, those factual determinations must still be presumed correct. *See id.*; *see also* 28 U.S.C. § 2254(e)(1).

## SPEEDY TRIAL

Santiago first claims that his right to a speedy trial was violated. This claim was raised in the state habeas proceedings. (RP 287, 340.) The trial judge rejected the claim on the merits after conducting an evidentiary hearing. (*Id.* 715; Tr. 10/17/08.) Santiago then filed a certiorari petition with the state supreme court, continuing to assert a denial of his right to a speedy trial. (Doc. 10 Ex. R.) The supreme court denied the certiorari petition. (*Id.* Ex. T.)

Speedy trial claims are evaluated by balancing four factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of the right; and 4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  The trial judge applied these factors in his written decision rejecting Santiago's speedy trial claim.  (*See* RP 703-17.)  Since the trial judge correctly identified the governing law, Santiago can only obtain federal habeas relief by showing that the trial judge unreasonably applied *Barker*.

### *Length of the Delay*

To trigger a speedy trial analysis, the interval between accusation and trial must cross the threshold that divides ordinary delay from presumptively prejudicial delay.  *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).  The length of delay is measured from the earlier of the date of arrest or formal accusation.  *See United States v. Marion*, 404 U.S. 307, 320-21 (1971); *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006).  Santiago was arrested on December 24, 1998 and was not tried until July 2003.  This four-and-a-half-year interval is sufficient to trigger the speedy trial analysis. *See Doggett*, 505 U.S. at 652 n.1 (stating that delay approaching one year is generally considered presumptively prejudicial).

### *Reason for the Delay*

Different weights are assigned to different reasons for delay.  *Barker*, 407 U.S. at 531.  "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.  Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* (footnote omitted). It is the government's burden to justify any delay.  *See id.*; *Jackson v. Ray*, 390 F.3d 1254, 1261 &

n.3 (10th Cir. 2004).   Therefore, unexplained delays are presumed to result from negligence and must be weighted moderately against the State.  *Jackson*, 390 F.3d at 1261-62.

After methodically examining the chronology of this case, the trial judge apportioned sixteen months of the delay to the prosecution and twenty-five months to the defense.  He determined that the remaining thirteen months should not be attributed to either side.  (RP 703-16.)

Without reconstructing the trial judge's month-by-month analysis, it is clear that his application of the second *Barker* factor was not unreasonable.  Santiago was initially indicted on January 6, 1999, and trial was set for July 19, 1999.  (*Id.* 386, 703.)  The parties filed a stipulated motion to continue, stating that defense counsel had another trial set on July 19th and that she planned to file a motion for a competency evaluation of Santiago.  (*Id.* 387.)  In September 1999, a judge in Sandoval County found Santiago incompetent to stand trial on charges pending against him there.  He was committed to a hospital for treatment to attain competency.  (*Id.* 398-99.)  Defense counsel filed a motion to dismiss this case based on the finding of incompetency in the Sandoval County case.  (*Id.* 396.)  She later filed a second motion to dismiss based on errors in the grand jury proceeding.  (*Id.* 404.)  This second motion was granted, and the indictment was dismissed without prejudice on March 27, 2000.  (*Id.* 406.)

Santiago was re-indicted on April 4, 2000.  (*Id.* 1.)  In July 2000, the Sandoval County judge found him competent to stand trial.  (*Id.* 413.)  The Bernalillo County case was set for trial in October 2000.  (*Id.* 414.)  This setting, and another one in November, lapsed without trial because another case was tried instead.  (*Id.* 420.)  The State filed an opposed motion to extend the time for trial until May 22, 2001.  (*Id.*)  This motion was granted.  (*Id.* 429.)  It is unclear what was happening in the case between November 2000 and the end of February 2001.  On March 1, 2001, the case was transferred to a different judge, who then set a trial date of April 30, 2001.  (*Id.* 364.)

4

On April 24th, defense counsel filed a motion for a competency evaluation, which was granted. (*Id.* 448, 455.) The competency evaluation was completed on August 1, 2001. The court found Santiago competent on September 5th and set trial for December 3rd. (*Id.* 447, 456.) In November 2001, the case was assigned to a new judge, whom the defense excused. (*Id.* 458-59.) The fourth and final judge was assigned on December 12, 2001. (*Id*. 460.) He promptly set trial for February 4, 2002. (*Id.* 461.) The case was not tried on this date for reasons that do not appear in the record. Two settings in April 2002 also passed without trial and without explanation. (*Id.* 714.) The trial was set again for May 24, 2002, but on May 21, 2002, counsel once more raised the issue of Santiago's competency. (*Id.*) The judge ordered another competency evaluation. (*Id.* 468.) On December 20, 2002, the judge signed a stipulated order committing Santiago to a hospital to attain competency. (*Id.* 470.) On March 17, 2003, the hospital reported that Santiago was competent. (*Id.* 715.) The case was set for April 7, 2003, but the parties stipulated to a continuance until May 27, 2003. (*Id.* 474-75.) The trial ultimately began on July 8, 2003.

Over two years were consumed by the issue of Santiago's competency. This is a valid reason for delay. *See United States v. Neal*, 27 F.3d 1035, 1043 (5th Cir. 1994). Nevertheless, the trial judge counted three months of this delay against the State because one of the evaluations was not conducted promptly. The defense also agreed to continue the trial from April 7, 2003 to May 27, 2003. This postponement should not be counted against the State. *See Batie*, 433 F.3d at 1291. There are some unexplained delays, but there is nothing to indicate that the State was deliberately trying to hamper the defense. It also appears that some of the delays were caused by crowded dockets. Although these delays must be counted against the State, they should not be weighted heavily. Moreover, during much of the four-and-a-half-year period, the six counts at issue in this proceeding were consolidated, at Santiago's request, with eight other charges—raising the

5

complexity level of the case.  (*See* RP 2-6, 401.)  More delay is tolerated for complex cases.  *See Barker*, 407 U.S. at 531.

### *Assertion of the Right*

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight . . . .  [and] failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."  *Id.* at 531-32.  The trial judge stated that Santiago never asserted his right to a speedy trial and, in accordance with *Barker*, weighted this factor heavily against him.

It appears that Santiago did not assert his right to a speedy trial until the beginning of trial. His state habeas counsel argued that this failure should not be weighted heavily against Santiago because of his competency issues.  Although this argument might have some force in other cases involving competency issues, the record in this case suggests that Santiago was not interested in having a speedy trial.  According to a June 2000 report from the hospital where Santiago had been committed, Santiago's test results indicated that he was malingering and feigning a mental disorder. (RP 542.)  A report from a different doctor in March 2003 states that Santiago "clearly" was "intentionally and willfully attempting to feign incompetence by exaggerating cognitive and psychiatric deficits.  He did not participate in this evaluation in a valid and honest fashion."  (*Id.* 560.)  The doctor concluded that Santiago was "intentionally malingering to avoid trial."  (*Id.*) Apparently crediting these reports, the trial judge noted in his discussion of prejudice that Santiago had used "machinations to avoid trial."  (*Id.* 717.)  Based on the record and Supreme Court precedent, it was reasonable for the trial judge to weight the third factor against Santiago.  *See Barker*, 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial.")

6

*Prejudice*

Prejudice is determined in light of the evils the speedy trial right is intended to avoid—oppressive pretrial incarceration, anxiety and concern of the defendant, and the possibility that the defense will be impaired.  *Id.* at 532.  Of these three, the most important is impairment of the defense "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  *Id.*

It appears that Santiago was incarcerated for the entire four-and-a-half years, except for the periods in which he was committed to a hospital as a result of his claimed incompetency.  However, on October 31, 2000, he pled guilty to charges in Sandoval County. (RP 422-23.)  Because the State agreed not to oppose a concurrent sentence with any sentence imposed for the Bernalillo County charges, his sentencing was continued until those charges were resolved.  (*Id.* 425.)  Santiago was transported from the Sandoval County Detention Center for his court appearances.  (*See id.* 46, 65, 68, 72, 77, 85, 92, 105, 122, 128, 129, 160, 162, 169, 175.)  Since Santiago would already have been incarcerated for a large proportion of the period regardless of the pending charges in this case, the pretrial incarceration factor does not weigh in favor of finding a speedy trial violation.  *See United States v. Brown*, 498 F.3d 523, 532 (6th Cir. 2007); *Wright v. Lockhart*, 854 F.2d 309, 312 (8th Cir. 1988).[1]  Santiago also received credit on his sentence for the pretrial confinement.  (RP 242.)

Santiago has never described any anxiety or concern that he experienced as a result of the delay, nor has he identified any way in which his defense was impaired by the delay.  However, "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim."  *Doggett*, 505 U.S. at 655.

---

[1] Santiago does not suggest that the delay deprived him of the opportunity to serve his sentences concurrently.

When there has been a protracted delay caused by governmental negligence, prejudice may be presumed.  *See id.* at 657-58; *see also Jackson*, 390 F.3d at 1263-64 (explaining this aspect of *Doggett*).  In *Doggett*, a six-year delay was attributable to the government's negligence.  505 U.S. at 657.  The Supreme Court held that this delay relieved the defendant of the need to make a particularized showing of prejudice.  *Id.* at 657-58; *see also Jackson*, 390 F.3d at 1263-64.  In this case, the State's negligence caused some of the delay.  However, "because the delay is less than six years, clearly established Supreme Court law does not require application of the *Doggett* rule." *Jackson*, 390 F.3d at 1264; *see also United States v. Seltzer*, 595 F.3d 1170, 1180 n.3 (10th Cir. 2010) (reiterating that a six-year delay is generally required for a presumption of prejudice).

### *Balancing the Factors*

The four-and-one-half-year delay in this case stretches well beyond the bare minimum needed to trigger a speedy trial analysis.  Moreover, some of this delay is unexplained and thus must be weighted moderately against the State.   But a large portion of the delay was justified by Santiago's claimed incompetency; Santiago did not make a timely demand for a speedy trial (and indeed there is evidence that he did not want to go to trial); and he has not shown any actual or presumed prejudice.  Viewing these factors in light of the standard of review, I cannot say that the trial judge's application of *Barker* was unreasonable.[2]

---

[2] An unpublished Tenth Circuit opinion is persuasive as to this conclusion. *See Tillman v. Kansas*, 274 F. App'x 706 (10th Cir. 2008).  Tillman experienced a nine-year delay.   The state court found that "Tillman consented to his counsel's numerous requests for continuances, . . . that Kansas law mandated an extensive preparation period for capital cases [and] that several mental health referrals, made at defense counsel's request, further delayed the proceedings, and . . . that those delays were compounded by Tillman's own refusals to eat and take psychiatric medication."  274 F. App'x at 708.  Further, "the only prejudice Tillman cited was the fact that he spent nine years in prison awaiting trial, but this prejudice was offset by the time-served credit Tillman later received and the fact that, for part of the period, he was simultaneously being held on an unrelated rape charge."  *Id.*  The Tenth Circuit upheld the denial of habeas relief "under the highly deferential standard of § 2254(d)," even though "the record [did] not explain with precision the exact reasons for each individual delay . . . ."  *Id.*

### COMPULSORY PROCESS

Santiago next claims that his right to compulsory process was violated.  He raised this issue for the first time in his *pro se* state habeas petition.  He asserted that his co-defendant, Michael Niavez, wrote a letter to his first defense attorney, stating that Santiago was not involved in the crimes and naming the actual person who committed the crimes along with Niavez.  (RP 288.)  In asserting that he was denied his right to compulsory process, Santiago stated that he asked his second attorney (the one who represented him at trial) to have Niavez testify.  (*Id.* 289.)  The trial judge appointed counsel to represent Santiago in the habeas proceeding.  The attorney filed an amended habeas petition, presenting this issue as ineffective assistance of counsel in failing to introduce the letter at trial.  (*Id.* 324.)  A second habeas attorney was appointed and filed a supplemental memorandum in support of the amended habeas petition.  This attorney argued that trial counsel was ineffective in failing to subpoena Niavez.  (*Id.* 342.)  The trial judge discussed the issue only in the context of ineffective assistance.  He stated, "The evidence against Defendant was rather strong.  Testimony by the convicted co-defendant that defendant was innocent would fly in the face of the overwhelming evidence that substantiated his conviction.  It is highly unlikely that the co-defendant's testimony would have changed the result."  (*Id.* 718.)  In Santiago's petition for writ of certiorari, counsel continued to assert that trial counsel was ineffective in failing to subpoena Niavez.  (Doc. 10 Ex. R at 16.)

In his federal habeas application, Santiago contends that he was denied compulsory process because Niavez did not testify.  He also contends that three eyewitnesses to the crime and one of the victims gave descriptions of the perpetrator that do not match his appearance.  He has submitted copies of the statements these individuals gave to the police.  Santiago argues that the jury would not have convicted him if it had heard the testimony of these individuals.

9

A federal court cannot grant habeas relief unless the applicant has exhausted the remedies available in state court. 28 U.S.C. § 2254(b)(1)(A). To satisfy the exhaustion requirement, the applicant "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This includes pursuing discretionary review when that review is part of a state's ordinary appellate review process. *Id.* "[I]f the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir.1992) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)). A federal court generally will not consider defaulted claims unless the applicant demonstrates either a fundamental miscarriage of justice or cause for the default and actual prejudice as a result. *Watson v. New Mexico*, 45 F.3d 385, 387-88 (10th Cir. 1995). To demonstrate cause, the applicant must show that some objective factor external to the defense impeded his compliance with New Mexico's procedural rules. *Id.* at 388. A fundamental miscarriage of justice occurs only in extraordinary cases when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* at 387 n.2.

Because Santiago's certiorari petition abandoned the compulsory process issue and raised only an ineffective assistance of counsel argument as to Niavez's absence from trial, the compulsory process aspect of his claim regarding Niavez has been procedurally defaulted. *See id.* at 387 ("Watson, by his failure to seek timely state supreme court review of the denial of his habeas corpus petition by the state district court, failed to exhaust the available state court remedies and his claims are now procedurally defaulted for purposes of federal habeas review."); *see also Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997) (holding that to exhaust a claim, the allegations and supporting

evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon the claim); 2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS C ORPUS PRACTICE AND PROCEDURE § 23.3(c) (5th ed. 2005) (stating that two claims may not be substantially equivalent for purposes of exhaustion if they arise under different constitutional provisions). Moreover, because Santiago did not mention the additional four witnesses until he filed his federal habeas petition, his compulsory process claim as to these witnesses is unexhausted, but not necessarily procedurally defaulted. *See Kerns v. Tansy*, No. 95-2091, 1996 WL 353788, at *2 (10th Cir. June 26, 1996) (concluding that a habeas petitioner would not necessarily be barred from raising a new issue in a second New Mexico habeas petition).

Respondents' answer confuses the concepts of exhaustion and procedural default as they apply in this case. Respondents do not directly address the failure to include compulsory process in the certiorari petition, but they argue that the failure to mention the additional witnesses in that petition resulted in a procedural default. For his part, Santiago has not attempted to demonstrate cause for any procedural default or a fundamental miscarriage of justice. Regardless of the procedural uncertainty surrounding the compulsory process claims, they fail on the merits. *See* 28 U.S.C. § 2254(b)(2) (providing that a federal habeas court may deny a claim on the merits, notwithstanding the failure to exhaust state remedies).

First, there is no indication that the trial court prevented Santiago from presenting any witnesses. Santiago alleges that he asked his attorney to present Niavez's testimony. He does not allege that the trial court excluded Niavez or any of the other witnesses.

Second, to establish a violation of his right to compulsory process, Santiago must show that his trial was fundamentally unfair. *Young v. Workman*, 383 F.3d 1233, 1238 (10th Cir. 2004) (relying on *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)). The testimony must have

been material; in other words, its admission would have created reasonable doubt or its exclusion might have affected the trial's outcome.  *See id.*  To determine whether the absence of Niavez's testimony meets this standard, it is necessary to review the facts of this case.

On December 23, 1998, two men robbed the jewelry department of a Service Merchandise store.  One of the men was carrying a metal box, which he claimed to be a bomb.  Authorities later determined that the box was not a bomb.  (Tr. 7/9/03 at 56-57.)  Two Service Merchandise employees identified Santiago as the man carrying the box.  (*Id.* at 20-21, 42.)  According to these witnesses, Santiago grabbed a customer and attempted to pull her out of the store with him.  (*Id.* at 22-23, 43.)  An off-duty police officer testified that he saw Santiago run out into the parking lot, carrying the box and shouting that he had a bomb.  (*Id.* at 9-12.)  In addition to this testimony, the jury saw a security camera video depicting the robbery, including the person holding the box and attempting to take the hostage.  (*Id.* at 26-32.) The box, which was left in the parking lot, was determined to carry Santiago's fingerprints.  (*Id.* at 85-87.)  A note that was used in the robbery also contained Santiago's fingerprints.  (*Id.* at 81-83.)

After the Service Merchandise robbery, the two men left the parking lot in a car.  The police later recovered some of the jewelry taken from the store in a car that was parked on a side street.  (*Id.* at 66-68.)  The perpetrators apparently drove that car just a short distance away before demanding that a woman give them the keys to her Ford Explorer.  (RP 249.)[3]  The next day, the police located the Ford Explorer parked near a halfway house.  (Tr. 7/9/03 at 91.)  They found Santiago inside the halfway house and arrested him.  (*Id.* at 92-93.)  An officer testified that

---

[3] The victim of this robbery testified by videotaped deposition, which is not included in the record before this Court.  She apparently identified Santiago as one of the men who took her vehicle.  (*See* Tr. 7/10/03 at 21-22.)

Santiago was wearing denim overalls when he was arrested.  (*Id.* at 93.)  The jury saw a picture taken of Santiago wearing the overalls on the day he was arrested.  It appears that one of the perpetrators of the Service Merchandise robbery wore overalls as well.  (Tr. 7/10/03 at 19.)

Considering all of this evidence, it is doubtful that the outcome of the trial would have been different if Niavez had testified.  Not only did at least three witnesses identify Santiago, the jurors also saw a videotape of the Service Merchandise robbery, allowing them to decide for themselves whether the witnesses' testimony was accurate.  Furthermore, Santiago's fingerprints were on the note and the box, and he was arrested near the stolen Ford Explorer, evidently wearing the same clothes that could be seen on the videotape.

Nor do the witness statements demonstrate that Santiago's trial was fundamentally unfair. Santiago seems to believe that the testimony of these witnesses would have exonerated him because their descriptions of the man with the box do not completely fit his appearance.  Santiago states in his federal habeas application that he weighs 177 pounds, is five feet and five inches tall, and does not have a very dark complexion.  Similarly, he testified at trial that he weighed about 177 pounds in 1998 and is five feet and four inches tall.  (Tr. 7/10/03 at 28.)

Two of the witnesses who gave statements actually testified at trial.  The hostage, who testified but did not expressly identify Santiago at trial, gave a police statement describing the perpetrator as "very dark big & heavy set."  (Doc. 1 unnumbered exhibit.)  Kevin Gagne was one of the store employees who testified that Santiago was the person carrying the box.  In his police statement, he described the person with the box as a black male weighing 210 pounds and standing five feet and ten inches tall.  (Doc. 1 unnumbered exhibit.)  Defense counsel cross-examined Gagne about this description in his police statement.  (Tr. 7/9/03 at 32.)  Since these two witnesses testified

13

at trial and defense counsel had an opportunity to cross-examine them, Santiago's right to compel their testimony was not violated.

The two remaining witness statements are from Service Merchandise employees. One of them gave the same physical description as Gagne. The other gave the same height, but estimated the perpetrator's weight as between 165 and 180 pounds. (Doc. 1 unnumbered exhibits.) Given all the evidence identifying Santiago as one of the perpetrators, testimony from one of these witnesses that the perpetrator weighed more than Santiago and from both of them that he was taller than Santiago likely would not have changed the outcome of the trial.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Santiago asserts that his trial counsel was ineffective in failing to assert his right to a speedy trial, failing to ensure Niavez's presence at trial or to offer the letter he allegedly wrote, and failing to offer the witness statements or testimony from those witnesses. Counsel's purported ineffectiveness regarding Niavez and the right to a speedy trial was raised in the state habeas and certiorari petitions. As noted above, the witness statements were not mentioned until the filing of the federal habeas petition. Although this issue is unexhausted, I will consider it on the merits. *See* 28 U.S.C. § 2254(b)(2).

To establish ineffective assistance of counsel, a habeas applicant must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the applicant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the applicant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694.

The trial judge cited *Strickland* in analyzing counsel's failures to raise the speedy trial issue and to call Niavez as a witness.  Accordingly, habeas relief cannot be granted unless he unreasonably applied *Strickland*.

Trial counsel testified at the state court evidentiary hearing that she should have filed a motion to dismiss based on the four-and-a-half-year delay.  (Tr. 10/17/08 at 22.)  The trial judge found, however, that "counsel, aware of [Santiago's] machinations and malingering conduct, had reason to believe that a motion to dismiss for violation of speedy trial rights would not be well taken. Furthermore, even if trial counsel had filed a motion to dismiss on speedy trial grounds, she should have had reasons to believe that the Motion would not be meritorious."  (RP 718.)

The trial judge's application of *Strickland* was reasonable because counsel cannot be held ineffective for not raising a meritless issue.  *See United States v. Dixon*, 1 F.3d 1080, 1083 n.5 (10th Cir. 1993), *abrogated on other grounds by Florida v. White*, 526 U.S. 559 (1999); *see also Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986) ("[T]he Sixth Amendment does not require that every possible motion be filed, but only those having a solid foundation.").  From the discussion above regarding the speedy trial issue, it is evident that a motion to dismiss would not have been meritorious.

If Santiago means to argue that counsel should have filed a motion for a speedy trial without requesting dismissal, this argument also fails.  Given all of the delays caused by Santiago's claimed incompetency, it is difficult to imagine when counsel could have interjected a request for a speedy trial.  Moreover, because Santiago has not identified any prejudice from the delay, he cannot show

a reasonable probability that the result of the case would have been different if the trial had been

held sooner.

Regarding Niavez's alleged letter exculpating Santiago, the trial judge noted that the

evidence against Santiago was strong and that this evidence likely would not have changed the

outcome of trial. (RP 718.) For the reasons discussed above regarding compulsory process, this was

a reasonable application of *Strickland*'s prejudice prong.

Turning to the witness statements, one of the employee witnesses, Gagne, testified and was

cross-examined by defense counsel regarding his police statement.  Santiago's complaint that this

information was not presented at trial is simply wrong.  Another of the witnesses, the hostage, also

testified.  Although defense counsel did not cross-examine her, this failure does not necessitate the

conclusion that she was ineffective.  *See United States v. Voigt*, 877 F.2d 1465, 1468 (10th Cir.

1989).  There was no dispute at trial regarding the commission of the crimes; the only dispute was

whether Santiago was involved.  Because the hostage did not identify Santiago as one of the

perpetrators during her direct examination, it was reasonable for counsel not to chance having her

identify him during cross-examination regarding her previous description of the perpetrator.  As for

the remaining two employee witnesses, the failure to call them to testify, simply to point out their

previous descriptions of the perpetrator, was not objectively unreasonable.  I note that in addition

to bringing out Gagne's police statement at trial, defense counsel also cross-examined the off-duty

police officer regarding his police report, which described the perpetrator carrying the box as being

five feet and ten inches tall.  (Tr. 7/9/03 at 17.)  Given all the evidence in the case, there is not a

reasonable probability that the outcome of the trial would have been different if two more witnesses

had testified similarly as to the perpetrator's appearance.

CONCLUSION

For the reasons stated above, I recommend that Santiago's application for a writ of habeas corpus be denied.

Furthermore, Santiago has not made a substantial showing of the denial of a constitutional right.  I therefore recommend that a certificate of appealability not be issued.  *See* 28 U.S.C. § 2253(c).

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE